

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-2003

# USA v. Freeman

Precedential or Non-Precedential: Precedential

Docket 01-3475

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Freeman" (2003). *2003 Decisions.* Paper 827.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/827

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed January 6, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 01-3475

UNITED STATES OF AMERICA

v.

ROBB WALKER FREEMAN,

      Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cr-00108)
District Judge: Honorable Charles R. Weiner

Argued June 10, 2002

Before: SLOVITER, ROTH & McKEE, Circuit Judges

(Opinion filed: January 6, 2003)

Patrick L. Meehan
United States Attorney

Laurie Magid
Deputy United States Attorney
 for Policy and Appeals

Robert A. Zauzmer
Assistant United States Attorney
Senior Appellate Counsel

Louis D. Lappen, Esquire (Argued)
Assistant United States Attorney
Suite 1250
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

 Attorneys for Appellee

Robert Epstein, Esquire
Assistant Federal Defender

Jonathan D. Libby, Esquire (Argued)
Research & Writing Specialist

David L. McColgin, Esquire
Supervising Appellate Attorney

Maureen Kearney Rowley, Esquire
Chief Federal Defender
Federal Court Division
Defender Association of Philadelphia
Suite 540 West - Curtis Center
Independence Square West
Philadelphia, PA 19106

Michael J. Kelly, Esquire
3007 Devereaux Street
Philadelphia, PA 19149

Attorneys for Appellant

OPINION OF THE COURT

ROTH, Circuit Judge:

Robb Walker Freeman challenges a 70 month sentence that he received after pleading guilty to receipt and possession of child pornography under 18 U.S.C. S 2252(a)(2) & (4)(B). In sentencing, the District Court departed upward from Criminal History Category I to Category III because it believed that Category I under-represented Freeman's criminal history and likelihood of committing future crimes. See United States Sentencing Guideline (U.S.S.G.) S 4A1.3. The court also imposed a

2

special, supervised release condition that prohibits Freeman from keeping any computer equipment in his home and from accessing the internet without permission of his probation officer.

We will vacate both the District Court's upward departure and its supervised release condition. Although the District Court heeded legitimate concerns when it increased Freeman's criminal history category, it erred by awarding a two-level departure without considering whether a one-level departure (to Category II) would be more appropriate. It also erred by failing to state the reasons for its special condition of supervised release and by imposing a condition that unreasonably impinges upon Freeman's liberty interests. See United States v. Sofsky, 287 F.3d 122, 124 (2d Cir. 2002).

I. Facts and Procedural History

Investigation and arrest of Freeman. This case arises from a child pornography investigation conducted by U.S. Customs Service agents and detectives from Delaware County. They were assisted by John Flemming, a convicted child molester, who helped in an effort to cooperate with federal and state authorities. Flemming had met Freeman many years earlier at Johns Hopkins' Sexual Disorders Clinic.

As part of the investigation, Flemming invited Freeman to

his home in Drexel Hill, Pennsylvania. Freeman accepted Flemming's invitation and met with Flemming and an undercover Delaware Police Detective, Mark Bucci. Bucci posed as a collector of child pornography and urged Freeman to show him the pictures of child pornography on Freeman's laptop. Bucci then showed Freeman a personal computer containing numerous child pornography images. Freeman viewed the images and said he would like to copy them. Freeman then connected his Iomega disk drive to Bucci's personal computer and downloaded the file containing child pornography. After Freeman left the meeting, he was arrested.

Upon his arrest, Freeman waived his rights and admitted that he had loaded numerous images of child pornography

3

onto his laptop and that he knew his possession and transportation of child pornography was illegal. The agents also executed a search warrant of Freeman's home in Maryland and discovered additional child pornography in computers, a scrapbook, and a videotape.

Initial Sentencing. On March 16, 2000, Freeman pled guilty to one count of receipt of visual depictions of minors engaged in sexually explicit conduct (18 U.S.C.S 2252(a)(2)) and one count of possession of visual depictions of minors engaged in sexually explicit conduct (18 U.S.C. S 2252(a)(4)(B)). Freeman's guilty plea agreement was limited to evidence regarding his possession of child pornography. The government noted that it intended, at the sentencing hearing, to present further evidence of facts that Freeman did not agree to in connection with his guilty plea.

At the first sentencing hearing, the government presented evidence and testimony to support its request that the court depart from Criminal History Category I to Criminal History Category III. The government argued that Freeman's criminal history did not adequately reflect the seriousness of his past criminal conduct and the likelihood of recidivism. See U.S.S.G. S 4A1.3. Evidence in support of the government's claim included:

> - Detective Bucci testified that Freeman had admitted to molesting numerous young boys and that he had admitted to recently taking advantage of opportunities to babysit and take nude photographs of young boys in Pennsylvania.

> - The pre-sentencing report also referred to records of Freeman's earlier treatment in the Sexual Disorders Clinic at Johns Hopkins. The records revealed that Freeman did not think it was wrong to engage in sexual relationships with young boys, and that Dr. Lehne, a licensed psychologist, believed that Freeman was at great risk for relapsing into inappropriate sexual behavior.

- Freeman had two prior convictions for sexual misconduct which were not included in his Criminal History calculation because of their age. They are a

4

1973 conviction for a perverted sex act and a 1984 conviction for sexual assault of a minor.

On cross-examination, however, Detective Bucci admitted that all of Freeman's physical molestation of children occurred at least 15 years ago. Freeman also testified at the sentencing hearing. He admitted that he was a pedophile. Although Freeman testified that he had not had any "improper" sexual contact with minors since 1984, he did not refute the government's contention that, more recently, he took advantage of opportunities to babysit and take nude photos of young boys. Freeman did contend nevertheless that the "the difficult pictures" taken recently "were not pornographic." Freeman did not contest the fact of his 1973 and 1984 convictions.

The District Court granted the upward departure from Criminal History Category I to Category III. Criminal History Category III, combined with Freeman's final adjusted offense level of 24,[1] produced a guideline sentencing range of sixty-three to seventy-eight months imprisonment. Criminal History Category I would have provided a 60-63 month range for Freeman, and Criminal History Category II would have provided a 60-71 month range. U.S.S.G. Ch. 5, Part A. The District Court applied Category III and granted Freeman a 72 month sentence as the middle range of sentences for that category. When doing so, the court did not consider whether Freeman would be more appropriately sentenced as a Criminal History Category II. Indeed, the government asked the court to clarify the basis for its upward departure:

---

1. To calculate Freeman's offense level, the District Court applied U.S.S.G. S 2G2.2, which covers offenses that include receipt of material involving the sexual exploitation of a minor. UnderS 2G2.2(a), the District Court found that Freeman's base offense level was 17. The court added two points because Freeman's offense involved a prepubescent minor (S 2G2.2(b)(1)); five points because Freeman engaged in a pattern of activity involving the sexual abuse or exploitation of minors (S 2G2.2(b)(4)); two points because a computer was used (S 2G2.2(b)(5)); and a one-level multiple count adjustment underS 3D1.4. He received a three point reduction for acceptance of responsibility under S 3E1.1, resulting in a total combined offense level of 24.

5

THE COURT: I stated for the record because of his previous record and because I think this is a danger to the community that we've raised the level to which we've sentenced him.

MR. LAPPEN: And I apologize, your Honor, but it has to be that his Criminal History Category is raised to Category [III] because this Criminal History understates his true criminal background and his risk for recidivism. And if that's your Honor's basis that is a legal basis under Harvey.

THE COURT: Couldn't have said it better myself.

MR. LAPPEN: Thank you.

This initial sentencing ruling by the District Court was also based on a mandatory minimum of five years due to Freeman's prior conviction under 18 U.S.C. S 2252(b)(1). Subsequently, in United States v. Galo, 239 F.3d 572 (3d Cir. 2001), we held that crimes such as Freeman's could not support a mandatory minimum sentence under the categorical approach, i.e., the court must look at the fact of conviction and the statutory definition of the offense rather than the actual conduct giving rise to the conviction. Id. at 577. Freeman filed an unopposed appeal of his sentence and we vacated his original sentence and remanded for sentencing without a mandatory minimum. As a result, on re-sentencing, a Criminal History Category I would have provided a 51-63 month range and a Criminal History Category II would have provided a 57-71 month range. U.S.S.G. Ch. 5, Part A.

Re-sentencing. The District Court did not conduct another evidentiary hearing at re-sentencing, as it reincorporated all statements and filings from the initial sentencing hearing into the re-sentencing proceeding. The government maintained its position that, under U.S.S.G. S 4A1.3, Freeman should be sentenced under Criminal History Category III. Freeman continued to oppose this position.

The District Court again decided to sentence Freeman under Criminal History Category III, although, because of Freeman's age,2 it reduced the sentence to 70 months,

---

2. Freeman was born on September 19, 1938.

6

followed by five years of supervised release. The District Court's reasons for departing to Category III at the first sentencing hearing were read into the record, and the court reiterated its rationale at this second hearing:

> Let me repeat it again. The Court will grant the Government's motion and will go to Category III because [Freeman's] Criminal History understates his criminal background, and also there is a risk of his recidivism, that is what the Court is looking at . .. . That is why it has decided to impose a seventy month sentence.

The court also issued a written memorandum providing the same reasons for granting the government's motion for an upward departure pursuant to U.S.S.G. S 4A1.3. Neither the District Court's statements nor its written order suggest that it considered whether Freemen's background or risk of recidivism could be appropriately addressed by a sentence under Criminal History Category II.

The District Court also imposed special conditions on Freeman's supervised release. It stated that:

> Defendant is prohibited from having any computer equipment in [his] place of residence. The defendant shall not possess or use a computer with access to any on-line computer service at any location without the written approval of the Probation Officer. This includes, although it is not limited to, any Internet service provider, bulletin board system, or any other public or private computer network. The defendant shall consent to periodic, unannounced examinations of [his] residence and possessions, to determine if the defendant is in possession of computer equipment or any child pornography. Any computer equipment or suspected pornography shall be seized.

II. Jurisdiction and Standard of Review

This litigation began as a criminal prosecution of Freeman for alleged violations of laws of the United States. Thus, the District Court had jurisdiction over Freeman's plea bargain and sentencing under 28 U.S.C. S 3231. We

have appellate jurisdiction to review the District Court's August 28, 2001 amended judgment. 28 U.S.C. S 1291; 18 U.S.C. S 3742(a).

We review the District Court's decision to grant an upward departure in sentencing for an abuse of discretion. Koon v. United States, 518 U.S. 81, 100 (1996). We review the District Court's decision to impose a special condition of supervised release under the same standard. United States v. Crandon, 173 F.3d 122, 127 (3d Cir. 1999).

III. Discussion

Freeman raises two basic challenges to the District Court's sentencing decision. First, he argues that the District Court erred by granting an upward departure of two criminal history categories without adequate consideration of a one category departure. Second, he argues that the District Court erred by imposing a condition of supervised release prohibiting Freeman from using or possessing a computer without the permission of his probation officer. We agree with both contentions.

A. Whether the District Court erred by granting an
        upward departure of two criminal history

> categories without adequate consideration of a one category departure.

The basic calculation of Freeman's criminal history score placed him in Criminal History Category I. Coupled with a final offense level of 24, Freeman's Category I guideline sentencing range was 51 to 63 months. The District Court departed upward from that range under U.S.S.G. S 4A1.3 based on its conclusion that Criminal History Category I did not adequately represent Freeman's criminal background or risk of recidivism. Thus, the court sentenced him to 70 months, the middle of the range for a person with Criminal History Category III and a final offense level of 24.

The District Court was justifiably concerned about Freeman's extensive molestation of children in the past and his likelihood of committing such crimes in the future, especially in light of his recent activity in babysitting and

taking nude photographs of young boys. Unfortunately, however, the court failed to follow the procedures set forth under S 4A1.3 for departing in such cases.

Section 4A1.3 allows a district court to consider departing from the applicable guideline range if"reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes."3 The Sentencing Commission has also made clear that courts, in considering a departure under S 4A1.3, must "use[ ] as a reference[ ] the guideline range for a defendant with a higher . . . criminal history category." Id. Thus, we have explained that this regime requires a district court to determine "which category (of those higher than the category originally calculated for the defendant) best represents the defendant's prior criminal history." United States v. Hickman, 991 F.2d 1110, 1114 (3d Cir. 1993).

If the court is considering departing by more than one category, moreover, it is "obliged to proceed sequentially," and it "may not move to the next higher category" before it finds that all lesser categories are inadequate. Id. This ratcheting requirement is not intended to have the District Court pay mere lip service to a discussion of each criminal history category that it rejects en route to the one finally selected. Indeed, too cursory a statement dismissing each lesser category would also be inadequate. United States v. Harris, 44 F.3d 1206, 1212 (3d Cir. 1995) (vacating sentence where district court stated that "the application of criminal history categories two, three, four and five are too lenient for the conduct in this case."). The ratcheting requirement is instead designed to ensure that the sentencing court's reasons for rejecting each lesser category be clear from the record as a whole. Id. The District Court must provide an adequate basis for us to ascertain whether

it completed its task of identifying the category
encompassing those defendants whose criminal histories

---

3. Although S 4A1.3 is a "policy statement," this Court has noted that it
is an "authoritative guide" for the application of the Guidelines. United
States v. Hickman, 991 F.2d 1110, 1113 n.7 (3d Cir. 1993).

most closely resemble the defendant's own. Id . at 1213; see
also United States v. Thomas, 961 F.2d 1110, 1118-19 (3d
Cir. 1992).

Under this standard, the District Court's sentencing
decision is clearly inadequate. When the District Court
departed from Category I to Category III, it never considered
whether the sentencing range provided by Category II would
be more appropriate to address Freeman's criminal history
and likelihood of committing further crimes. We do not
mean to intimate that Category III is inappropriate for
Freeman. The District Court may well find that Category II
understates his criminal history. We must vacate the
District Court's current sentencing decision, however,
because the District Court failed to exercise its discretion in
determining which of the higher guideline sentencing
ranges most accurately represents Freeman's profile. On
remand, the court must consider whether Category II or
Category III most accurately addresses Freeman's criminal
history and proclivity to commit further crimes.

B. Whether the District Court erred by imposing a
      condition of supervised release prohibiting
      Freeman from using or possessing a computer.

As an initial matter, we note that both the government
and Freeman agree that the District Court erred in failing
to state a basis for the computer restriction imposed as
part of Freeman's supervised release. See United States v.
Loy, 191 F.3d 360, 371 (3d Cir. 1999) ("sentencing judge is
required by statute to state the reasons in open court for
imposing a particular sentence"). Thus, we will remand for
the District Court to substantiate the reasoning behind its
conditions of supervised release.

We also agree with Freeman that a special condition
forbidding him from possessing any computer in his home
or using any on-line computer service without the written
approval of the probation officer is overly broad; it involves
a greater deprivation of liberty than is reasonably necessary
to deter future criminal conduct and to protect the public.
18 U.S.C. S 2553(a)(2). United States v. Sofsky, 287 F.3d
122, 124 (2d Cir. 2002) (vacating condition that would
require probation officer to approve all computer and

internet access by a defendant who pled guilty to receiving

child pornography over the internet).

As in Sofsky, a total ban on internet access prevents use of email, an increasingly widely used form of communication, and other common-place computer uses such as getting a weather forecast or reading a newspaper online. Id. at 126. There is no need to cut off Freeman's access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on Freeman's hard drive or removable disks. Id. Although we have previously allowed a condition restricting all internet access, see United States v. Crandon, 173 F.3d 122, 125 (3d Cir. 1999), the defendant in Crandon used the internet to contact young children and solicit inappropriate sexual contact with them. Such use of the internet is harmful to the victims contacted and more difficult to trace than simply using the internet to view pornographic web sites. There is nothing in this record to suggest that Freeman has used the internet to contact young children. We are not in any way limiting our ability to so restrict the use of computers when a defendant has a past history of using the internet to contact children. See United States v. Lee, ___ F.3d ___, ___ fn 1 (3d Cir. 2002) (Condition 5 of supervised release prohibits defendant from owning or using a personal computer with Internet access in his home, except for work). Moreover, if Freeman does not abide by more limited conditions of release permitting benign internet use, it might be appropriate to ban all use. Under the record before us, however, it is not reasonably necessary to restrict all of Freeman's access to the internet when a more limited restriction will do.4

IV. Conclusion

The District Court's August 28, 2001 sentencing order will be vacated, and we will remand this case for a

_____

4. In light of our disposition, we need not discuss the discrepancy between the District Court's orally announced sentence and the written sentence.

11

resentencing determination consistent with the above opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12